<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1462
No. 04-1523

MASSARO LIMITED PARTNERSHIP (PARK WEST TWO),
a Pennsylvania Limited Partnership

v.

BAKER & TAYLOR INC., a corporation,

Appellant, No. 04-1462

MASSARO LIMITED PARTNERSHIP (PARK WEST TWO),
a Pennsylvania Limited Partnership,

Appellant, No. 04-1523

v.

BAKER & TAYLOR INC., a corporation

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

District Court No. 00-cv-01234
District Judge: The Honorable Gary L. Lancaster

Argued July 14, 2005

Before:  ALITO, VAN ANTWERPEN, and ALDISERT, <u>Circuit Judges</u>

(Opinion Filed: December 15, 2005 )

ANTHONY CILLO (Argued)
Cohen & Grigsby, P.C.
11 Stanwix Street, 15th Floor
Pittsburgh, Pennsylvania  15222

HALSEY G. KNAPP, JR.
Foltz Martin, LLC
Suite 750
Five Piedmont Center
Atlanta, Georgia  30305

THOMAS L. PATTEN
RICHARD P. BRESS
Latham & Watkins
555 11th Street, N.W.
Suite 1000
Washington, DC  20004

*Counsel for Baker & Taylor Inc.*

STANLEY M. STEIN (Argued)
BETH S. MILLS
Feldstein Grinberg Stein & McKee
428 Boulevard of the Allies
Pittsburgh, Pennsylvania  15219

*Counsel for Massaro Limited Partnership (Park West Two)*

OPINION OF THE COURT

PER CURIAM:

Baker & Taylor Inc. ("B&T") appeals from a final order of the District Court denying its motion for judgment as a matter of law following a jury verdict against it on a claim for promissory estoppel. Massaro Limited Partnership (Park West Two) ("Massaro") cross-appeals an earlier order, now final, which awarded summary judgment to B&T on Massaro's contract claim for breach of the implied covenant of good faith and fair dealing. Because we write solely for the parties, we need not recite the facts any further. For the reasons set forth below, we reverse the judgment of the District Court on the promissory estoppel claim and affirm in all other respects.

I.

We review an award of summary judgment de novo, applying the same test that the District Court should have applied. In re Ikon Office Solutions, Inc., 277 F.3d 658, 665 (3d Cir. 2002). Under Federal Rule of Civil Procedure 56(c), summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this test, the Court must draw all reasonable inferences from the evidence in favor of the nonmoving party and may not weigh the evidence or assess credibility. See Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999); Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., 998 F.2d 1224, 1230 (3d Cir. 1993).

The denial of a motion for judgment as a matter of law also receives plenary review. See Le v. Univ. of Pa., 321 F.3d 403, 406 (3d Cir. 2003). When the jury has resolved an issue of fact, the Court's review is "'limited to examining whether there is sufficient evidence to support the verdict, drawing all reasonable inferences in favor of the verdict winner.'" Id. (quoting Kelly v. Matlack, Inc., 903 F.2d 978, 981 (3d Cir. 1990)). The verdict is supported by sufficient evidence if the record reflects at least the "minimum quantum" of evidence necessary for a reasonable jury to find for the prevailing party based on the applicable evidentiary standard. See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir. 1995).

II.

Massaro argues that the District Court should have admitted evidence of B&T's bad faith, but any error has been mooted by the jury's verdict on Massaro's contract claim. When asked whether "the 'Letter of Intent' . . . contractually obligated Baker & Taylor to rent the property," the jury responded in the negative. App. at 194. Yet Massaro submits, and we agree, that the Letter of Intent ("LOI") was a contract imposing binding obligations on each party. See, e.g., Massaro's Br. at 14-17; ATACS Corp. v. Trans World Comms., 155 F.3d 659, 667 (3d Cir. 1998). Viewing these facts in a manner that gives B&T the benefit of every reasonable inference, we believe the jury found that B&T's performance under the LOI never came due because the board approval condition was never satisfied.

This finding, which is supported by the plain text of the LOI, forecloses Massaro's good faith claim because "[i]mplied duties cannot trump the express provisions in the contract." John B. Conomos, Inc. v. Sun Co. (R&M), 831 A.2d 696, 706 (Pa. Super. Ct. 2003). No duty to negotiate a final lease in good faith can be inferred from the LOI if the board approval condition expressly relieved B&T of any duty to lease the premises. Since this is precisely what the jury found when asked whether the LOI "contractually obligated Baker & Taylor to rent the property," Massaro's good faith claim is foreclosed and B&T's award of summary judgment must be affirmed.[1]

---

[1] Having affirmed on the alternative ground afforded by the jury's verdict, we need not decide whether Pennsylvania law would read a covenant of good faith and fair dealing into this particular contract. Compare Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993) ("[U]nder Pennsylvania law, every contract does not imply a duty of good faith."), with Academy Indus., Inc. v. PNC Bank, N.A., Nos. 00-2383 & 00-0634, 2002 WL 1472342, at *7 (Pa. Ct. Com. Pl. May 20, 2002) (unreported decision) (declaring that "a covenant of good faith is implied in every contract" and criticizing contrary decisions on the ground that they confused good faith duties in tort and contract), and Fremont v. E.I. DuPont DeNemours & Co., 988 F. Supp. 870, 874 (E.D. Pa. 1997) (questioning the soundness of the precedent underlying Parkway Garage).

We also need not decide whether Massaro's endorsement of the magistrate's report and recommendation effected a waiver. B&T argues that it did under an old line of Supreme Court authority, but those cases involved consent decrees. See United States v. Babbitt, 104 U.S. 767, 768 (1881); Pac. R.R. v. Ketchum, 101 U.S. 289, 295 (1879). Those cases did not address factors relevant to the operation of the magistrate system, such as the text of the Federal Magistrates Act, 28 U.S.C. § 636. Cf. Henderson v. Carlson, 812 F.2d 874, 877-78 (3d Cir. 1987) (concluding, based in part on the text of § 636(b)(1)(C), that failure to object to a magistrate's recommendation does not effect a waiver). Whether a party's endorsement of a magistrate's recommendation results in a waiver thus remains an open question. Because a waiver would not affect our jurisdiction, see Ketchum, 101 U.S. at 295; Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993), we reserve this interesting issue for another day.

5

III.

We turn to B&T's motion for judgment as a matter of law. The jury found by clear and convincing evidence that "Mr. Benjamin promised that Baker & Taylor's Board's approval of the rental agreement was a 'mere formality' and thus, Baker & Taylor was committed to renting the property." App. at 196. The parties dispute whether the jury found an express promise and, if not, whether an implied promise could support an estoppel. Although we tend to believe the evidence, viewed in the light most favorable to Massaro, could easily support a finding that an express promise had been made, we need not resolve this issue definitively. Under the facts of this case, even an express promise would be unenforceable as a matter of law.

Pennsylvania's doctrine of promissory estoppel is set forth in the Second Restatement of Contracts, which provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Restatement (Second) of Contracts § 90(1) (1981); see also Pittsburgh Baseball, Inc. v. Stadium Auth., 630 A.2d 505, 509 n.5 (Pa. Commw. Ct. 1993) ("Pennsylvania has adopted the doctrine of promissory estoppel as it appears in the Restatement . . . ."). As the last clause of this formulation makes clear, not every promise on which a party reasonably and foreseeably relies is enforceable. The enforceability of the promise

depends on the following factors:

> the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

Restatement § 90 cmt. b.

The Pennsylvania Supreme Court applied these factors in <u>Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.</u>, 636 A.2d 156 (Pa. 1994). In that case, the defendant promised the plaintiff that it had no intention of opening a pharmacy in its store if the plaintiff opened one in a nearby retail space. The plaintiff opened its pharmacy and then sought to enforce the defendant's promise when the defendant opened one in its store. Concluding that the trial court's findings were unsupportable, the Pennsylvania Supreme Court denied enforcement of the promise on the grounds that the plaintiff's "reliance was unreasonable; nothing was done to formalize the promise; and no evidentiary, cautionary or deterrent functions were met under the circumstances." <u>Id.</u> at 160.

These same factors weigh heavily against enforcement here. Like the words at issue in <u>Thatcher's Drug Store</u>, Benjamin's promise was "indefinite on its face." 636 A.2d at 160 n.7. The phrase "mere formality" does not actually promise board approval so much as characterize the process by which board approval will be sought and predict a

likely outcome. Indeed, David Massaro admitted that Benjamin's statement was a "prediction of future events" and "inherently unreliable." App. at 436-37. As such, it could hardly assure Massaro that B&T was "committed" to leasing the premises. Cf. Josephs v. Pizza Hut of Am., Inc., 733 F. Supp. 222, 226-27 (W.D. Pa. 1989) (concluding that an estoppel could not be supported by an assurance that execution of a lease was a "mere formality").

Massaro understood the importance of having B&T's commitments in writing (which was why it pressed B&T to sign the LOI), yet it did nothing to have Benjamin's promise formalized or memorialized. It relied on an oral promise made on the spot during a telephone call from a "disturbed" David Massaro. App. at 426. As in Thatcher's Drug Store, "the record fails to reveal that the parties even so much as shook hands" to cement their understanding of Benjamin's promise. 636 A.2d at 161. The omission of any formality is all the more striking in light of the tension between the promise and the text of the LOI, which stated without any qualification that the lease was subject to board approval. Just as the supermarket's lease gave it "a clear right" to open a pharmacy, id. at 160, the LOI gave B&T a clear right to reject the lease.

Massaro argues that its reliance was reasonable in light of its ongoing relationship with B&T, but the parties' relationship is largely beside the point. Though equitable in origin, the doctrine of promissory estoppel serves as a consideration substitute. See Fried v. Fisher, 196 A. 39, 41-42 (Pa. 1938); Robert Mallery Lumber Corp. v. B. & F. Assocs.,

8

Inc., 440 A.2d 579, 583 (Pa. Super. Ct. 1982). It operates to protect a promisee whose reliance cannot be secured by contract because the promise on which he relied was unsupported by consideration. See Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416 (3d Cir. 1990); Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 408 (E.D. Pa. 2002); Fried, 196 A. at 41. As one Court explained, it is "an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing." Iversen Baking Co. v. Weston Foods, Ltd., 874 F. Supp. 96, 102 (E.D. Pa. 1995).

If anything, Massaro's relationship with B&T militates against enforcement. At least the plaintiff in Thatcher's Drug Store could claim that it never incorporated the promise into the parties' written agreement because there was no agreement. Massaro, by contrast, was in the course of negotiating the LOI at the time the promise was made. Had it wished to rely on Benjamin's assurance that board approval was a "mere formality" and that B&T was committed to leasing the premises, it could have bargained to have this language included in the LOI. See Kreutzer v. Monterey County Herald Co., 747 A.2d 358, 362 (Pa. 2000) (observing that "persons of ordinary prudence will modify a writing with another writing in any matter of importance"). Since Massaro's loss could have been avoided by including Benjamin's promise in the parties' agreement, equitable enforcement of the promise was not necessary to avoid injustice. Cf. Restatement § 90(1).

Finally, the indefinite character of Massaro's reliance counsels against enforcement. There was no question in Thatcher's Drug Store that all of the plaintiff's damages were incurred in reliance on the defendant's promise. The undisputed record here shows just the opposite. Massaro faxed a letter to Equitable Resources Marketing Group ("Equitable") on March 16, 2000, offering to terminate its lease for $200,000. Massaro does not dispute that this offer satisfied the Statute of Frauds for any modification of the parties' interests in the property. See, e.g., 68 Pa. Cons. Stat. § 250.202; Target Sportswear, Inc. v. Clearfield Found., 474 A.2d 1142, 1149 (Pa. Super. Ct. 1984). Had Equitable accepted the offer by return fax that day, Massaro would have had a binding obligation to terminate the lease. See Taylor v. Stanley Co. of Am., 158 A. 157, 158 (Pa. 1932). The record thus leaves no doubt that Massaro was prepared to release Equitable on March 16, 2000 – five days before the LOI was signed. Since the LOI served as the predicate for Benjamin's promise that board approval was a "mere formality" and that B&T was committed to a lease, any action prior to its signing could not have been taken in reliance on Benjamin's promise.

Even if Massaro relied on Benjamin's promise in releasing US Airways, Inc., the remaining Restatement factors do not justify the recovery of this piecemeal reliance. For the reasons given above, those factors weigh against enforcement at least as heavily here as they did in Thatcher's Drug Store. No reasonable factfinder could conclude that enforcement of Benjamin's promise is necessary to avoid an injustice; indeed, we believe

10

enforcement is likely to perpetrate an injustice. B&T was entitled to judgment as a matter of law, and the judgment of the District Court is accordingly reversed.

IV.

In sum, we conclude that B&T was entitled to summary judgment on Massaro's claim for breach of an implied covenant of good faith and fair dealing, and we affirm that portion of the District Court's judgment. We also conclude that B&T was entitled to judgment as a matter of law on Massaro's claim for promissory estoppel and that the District Court erred in denying its motion. Because we reverse that portion of the judgment, we need not resolve the parties' dispute over the proper calculation of Massaro's damages. On remand, an appropriate judgment shall be entered for B&T.